*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 25, 2016                521569
_____

ASHU RUPARELIA,
                    Respondent,

          v                                MEMORANDUM AND ORDER

KIRSTY RUPARELIA,
                    Appellant.
_____

Calendar Date:   January 6, 2016

Before:   McCarthy, J.P., Garry, Rose and Devine, JJ.

                    _____

          John T. Casey Jr., Troy, for appellant.

          Miller Mayer, LLP, Ithaca (R. James Miller of counsel), for
respondent.

                    _____

Devine, J.

          Appeal from a judgment of the Supreme Court (Rumsey, J.),
entered January 27, 2015 in Tompkins County, ordering, among
other things, enforcement of the parties' separation agreement,
upon a decision of the court.

          Plaintiff (hereinafter the husband) and defendant
(hereinafter the wife) were married in Canada in 1994, moved to
the United States the following year and have three children
(born in 1995, 1998 and 2003).  The husband is a medical doctor
and the wife has a Master's degree in social work.  In 2011,
serious marital discord prompted them to participate in mediation
regarding the various issues implicated in dissolving the
marriage.  They agreed during mediation to many matters
including, as relevant here, the division of assets, spousal
maintenance and child support.  Those terms were formally set

forth in a separation agreement, which the parties executed in June 2011.

The husband commenced an action in December 2011 seeking a no-fault divorce that incorporated the terms of the separation agreement. The wife counterclaimed to rescind the separation agreement, then commenced an action for the same relief. Supreme Court consolidated the actions and, after a nonjury trial, rendered a thoughtful and detailed decision finding that the wife had failed to establish sufficient grounds to set aside the separation agreement. The parties acknowledged that child support needed to be recalculated, which was accomplished by Supreme Court. A judgment of divorce incorporating the separation agreement was then entered, and the wife appeals.

The wife argues that Supreme Court erred in not rescinding the separation agreement but, "[w]hile a separation agreement will be more closely scrutinized by the courts than ordinary contracts given the fiduciary relationship between husband and wife, [it] will not be set aside unless there is evidence of 'overreaching, fraud, duress or a bargain so inequitable that no reasonable and competent person would have consented to it'" (Empie v Empie, 46 AD3d 1008, 1009 [2007], quoting Curtis v Curtis, 20 AD3d 653, 654 [2005]). "[S]pouses are encouraged to resolve their own issues and, for that reason, judicial review of such agreements should be exercised sparingly and courts should not redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect would view one or more of the specific provisions as improvident or one-sided" (Bishopp v Bishopp, 104 AD3d 1121, 1122 [2013] [internal quotation marks, citations and brackets omitted]; see Marin-Brown v Brown, 79 AD3d 1302, 1303 [2010]). "Indeed, a separation agreement is not per se unconscionable simply because marital assets are divided unequally, because one spouse gave away more than that spouse might have been legally required to do, or because the spouse's decision to approve the agreement might be characterized as unwise" (Lounsbury v Lounsbury, 300 AD2d 812, 814 [2002] [internal quotation marks, citations and brackets omitted]; see Cheruvu v Cheruvu, 59 AD3d 876, 878 [2009]). Where, as here, a trial has been conducted, we accord "deference to the trial court's findings on issues of witness credibility due to its

advantage of observing the witnesses during the course of their testimony" (Broer v Hellermann, 2 AD3d 1247, 1248 [2003]).

The separation agreement provided, in pertinent part, that the husband kept the marital home with a net worth of $300,000 (i.e., a $650,000 value encumbered by a $350,000 mortgage assumed by the husband) and the wife received a $250,000 cash payout from the husband, which she used to complete the transaction on a $208,000 home that she had contracted to purchase. The wife kept a cottage on Lake Ontario and the husband a vacant lot in Jefferson County, with agreed upon values of $350,000 and $70,000, respectively. Each retained their premarriage Canadian retirement funds and further agreed that their individual retirement accounts would remain separate property. The husband was also a partner in a medical practice, and the wife waived any interest she might otherwise have had in that practice.

The husband, whose annual income exceeded $400,000, agreed to pay the wife maintenance of $70,000 per year for five years as well as her health insurance and uncovered medical costs for three years. The husband accepted the responsibility to pay the children's college expenses, their medical insurance and uncovered health expenses and monthly child support of $1,667 for the three children, reduced to $1,417 for two children and $1,259 for one child. Supreme Court modified the monthly child support to $3,602 (three children), $3,105 (two children) and $2,112 (one child) during the time that the wife received maintenance and, after maintenance ceased, to $4,202 (three children), $3,622 (two children) and $2,463 (one child).[1]

The wife asserts that the husband purposely hid some assets and he verbally abused and threatened her, and that her recent cancer treatment had diminished her ability to make sound decisions. The primary assets that she claims were not revealed by the husband included a $294,000 joint Vanguard account — which the husband liquidated to pay the wife $250,000 under the

_____

[1]  Under the separation agreement, child support continues to the later of age 21 or completion of four years of post-high school education (not to extend beyond age 24).

agreement and to pay down the mortgage on the primary marital residence – and a retirement account from the husband's practice valued at $112,000 as of June 2011. The Vanguard account was a joint account, however, and the wife acknowledged seeing the statements arrive in the mail. While she elected not to give much attention to their finances, it is apparent that the husband was not hiding this or any other asset. The record accordingly supports Supreme Court's finding that the wife was aware of the accounts. The wife also acknowledged that she did not want to pursue a claim for any value in the husband's share of the medical practice, despite being aware that she could do so. She was told by the mediator that she could seek legal counsel at any time, and she had friends who repeatedly urged her to consult an attorney. The wife knew that the husband was getting more than half of the marital assets. She nevertheless chose to accede to that division of assets, and the proof at trial suggested that she did so in an effort to quickly settle matters so that she could close on a home that she had contracted to purchase.

Although there was hostility as the marriage dissolved, the proof found credible by Supreme Court did not establish a level of duress or undue influence sufficient to rescind the agreement. Nor was there competent evidence establishing that the wife's medical condition prevented her from adequately understanding and freely entering into the agreement. The record reveals two mature and well-educated individuals who, with the assistance of a professional mediator, elected to negotiate over several weeks to divide their substantial assets as well as address other issues in dissolving their marriage. The wife communicated certain goals to the mediator, most of which she achieved, and chose not to consult with an attorney despite being told by several individuals that she should do so. In short, while the resulting agreement unequally divided marital assets and was arguably unwise for the wife to accept, it was not unconscionable or so disproportionate that no reasonable person would agree to it (see Mesiti v Mongiello, 84 AD3d 1547, 1550 [2011]).

We are unpersuaded by the wife's contention that Supreme Court erred in its determination of child support. The court properly considered the appropriate factors, including Domestic Relations Law § 240 (1-b) (f) regarding combined parental income

exceeding $141,000 (see Domestic Relations Law § 240 [1-b] [c] [3]; see also Social Services Law § 111-i [2] [b]).  Its award of an additional 10% of the income exceeding $141,000 did not constitute an abuse of discretion under the circumstances (see e.g. Vantine v Vantine, 125 AD3d 1259, 1262 [2015]; Quinn v Quinn, 61 AD3d 1067, 1072 [2009]).  Nor did Supreme Court err in awarding durational maintenance as set forth in the separation agreement (see Domestic Relations Law § 236 [B] [3]; Cheruvu v Cheruvu, 59 AD3d at 879; Broer v Hellermann, 2 AD3d at 1248-1249).

McCarthy, J.P., Garry and Rose, JJ., concur.

ORDERED that the judgment is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court